## WINEBURGH et al. v. DALLAS POSTER ADVERTISING CO.

### No. 12070.

Court of Civil Appeals of Texas. Dallas.

Nov. 7, 1936.

Renfro, McCombs & Kilgore and Wm. Andress, Jr., all of Dallas, for appellants.

H. P. Edwards, of Dallas, and J. D. Williamson, of Waco, for appellee.

LOONEY, Justice.

Henry Wineburgh and H. H. Wineburgh (father and son) residents of the state of New York, instituted this suit under the provisions of chapter 7, title 32, R.C.S. (article 1379 et seq.), for the dissolution of the Dallas Poster Advertising Company (a domestic corporation) and incidentally, for the appointment of a receiver to liquidate the affairs of the corporation. As basis for the action, plaintiffs alleged that they owned 32 per cent. of the stock of the defendant corporation, and that it was hopelessly insolvent. Honorable Claude M. McCallum, judge of the 101st district court of Dallas county, granting leave, the suit was filed, defendant duly served, and answered denying that it was insolvent, alleging that it was a going concern, actively prosecuting the poster advertising business. Defendant also alleged that the suit was not instituted in

good faith, but with sinister aims on the part of plaintiffs, (a) to defeat a suit filed by defendant against Henry Wineburgh in the Supreme Court of New York county, state of New York, to recover approximately $73,000, amount of funds belonging to defendant alleged to have been unlawfully abstracted by Wineburgh while he was in control of the affairs of defendant, and (b) by securing its dissolution, to destroy defendant as a competitor of the United Advertising Corporation, which was controlled and largely owned by plaintiffs. The judge who granted plaintiffs leave to file the suit, presided at the trial, and, after hearing evidence, found for defendant, denying plaintiffs the relief sought, from which they appealed.

As the evidence admitted of different, conclusions, we think the trial court was, justified in resolving the matter in favor of the defendant. However, plaintiffs insist that, as the evidence showed defendant to be hopelessly insolvent, it should have been dissolved. This contention is based upon data appearing in defendant's balance sheet, giving the status of its affairs as of April 30, 1935, that is, showing assets of the value of $43,587.71, of which $10.50 was cash, $3,400.94 bills receivable, and other physical assets, chiefly billboards and leases on which they stood, as against total liabilities of $84,769.40, including $25,000, the amount of defendant's capital stock.

Defendant insists that, the balance sheet upon which plaintiffs rely does not truly represent the reasonable value of the company's assets, in that, the federal income tax regulation (of which the court will take judicial knowledge) requires the taxpayer to inventory assets, at either cash or market value, which ever is lower, and does not permit assets to be carried at their reasonable value. There was evidence showing that defendant owned 245 unlighted billboards, located in the city of Dallas, reasonably worth $200 each ($49,000); 90 lighted billboards also in Dallas, reasonably worth $250 each ($22,500); 76 other billboards located elsewhere, reasonably worth $100 each ($7,600); real estate reasonably worth $18,500; and accounts receivable amounting to $3,400, making a total of $101,000, not to mention, as a potential asset, the value of the cause of action being prosecuted by defendant against Wineburgh in New York to recover $73,000 alleged to have been wrongfully abstracted from defendant.

The record discloses that prior to the "depression" defendant had conducted an exceedingly profitable business; that early in January, 1931, Henry Wineburgh was removed, and Alf A. Edwards was elected president of defendant, and was holding that position at the time of the trial in May, 1935. As phrased by Mr. Edwards, the bottom dropped out of business during the depression, yet in May, 1935, under his presidency and financial assistance, the defendant was coming through with brighter prospects, and, although for several years previous it had operated at a loss, at the time of trial the indications were that "the corner had been turned." The liabilities of defendant, aside from the amount of capital stock, consisted chiefly of its indebtedness to its president, Mr. Edwards, that is, it owed him for money advanced—about $23,000—and $16,626 uncollected salary accruing since 1932. Neither Mr. Edwards nor any other creditor of defendant was pressing for payment. Mr. Edwards, the largest stockholder and creditor, expressed confidence in the future of the company, stating that the general trend of business in Dallas, in view of the opening of the Texas Centennial, was upgrade. On this point, Mr. George Vallin, manager, testified that the company was actively engaged in selling poster advertising, that its business was improving, and at the time of trial, there existed a greater demand for poster advertising than for several years.

The record further discloses that, on behalf of the United Advertising Corporation, a local competitor of defendant for advertising business, plaintiff endeavored to acquire by purchase the billboards owned by defendant, and failing in this, immediately instituted the suit for dissolution. The evidence, we think, justifies the conclusion that the suit was not instituted by plaintiffs primarily to salvage their interests in the assets of the company, but to frustrate or defeat the successful prosecution of the suit by defendant against Henry Wineburgh pending in a court in New York, and to remove the defendant as an active local competitor of the United Advertising Corporation, a concern under the control of plaintiffs.

In determining whether or not a corporation at a particular time is solvent or insolvent, Judge Stayton, in Lyons-

254

Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Tex. 143, 165, 24 S.W. 16, 25, 22 L.R.A. 802, quoting with approval from Corey v. Wadsworth, 99 Ala. 68, 11 So. 350, 23 L.R.A. 618, 42 Am.St.Rep. 29, announced the most satisfactory rule to which our attention has been called, as follows: "At what stage of a corporation's affairs must it be pronounced insolvent, so as to bring it within the principles we have declared? It is not enough that its assets are insufficient to meet all its liabilities, if it be still prosecuting its line of business, with the prospect and expectation of continuing to do so,—in other words, if it be, in good faith, what is sometimes called a 'going' business or establishment. Many successful corporate enterprises, it is believed, have passed through crises where their property and effects, if brought to present sale, would not have discharged all their liabilities in full. We feel safe in declaring that when a corporation's assets are insufficient for the payment of its debts, and it has ceased to do business, or has taken, or is in the act of taking, a step which will practically incapacitate it for conducting the corporate enterprise with reasonable prospect of success, or its embarrassments are such that early suspension and failure must ensue, then such corporation must be pronounced insolvent."

Applying the doctrine announced by Judge Stayton to the facts of the instant case, we are of opinion that the trial court correctly held plaintiffs not entitled to the relief sought, therefore affirm the judgment.

Affirmed.